844 So.2d 510 (2003)
Jerry VINCE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01376-COA.
Court of Appeals of Mississippi.
April 29, 2003.
*511 Glenn Louis White, Petal, attorney for appellant.
Office of the Attorney General, by Charles W. Maris, attorney for appellee.
*512 Before McMILLIN, C.J., BRIDGES and GRIFFIS, JJ.
McMILLIN, C.J., for the court.
¶ 1. Jerry Vince was convicted of receiving stolen property by a Walthall County Circuit Court jury and was sentenced to the maximum allowable term of five years. Based on a finding that Vince had two prior felony convictions, the trial court ordered that the sentence be served without eligibility for probation or parole. Vince has appealed his conviction and sentence to this Court and asserts the following errors: (a) the trial court erred in determining that Vince's prior conviction for interstate transportation of a stolen vehicle was admissible for consideration by the jury as a part of the prosecution's case; (b) the court erred in refusing his requested circumstantial evidence instruction; (c) Vince received ineffective assistance of counsel based on defense counsel's failure to raise a hearsay objection to certain testimony; (d) the evidence establishing his guilt was insufficient as a matter of law to support the conviction, or, alternatively the guilty verdict was against the weight of the evidence; and (e) his sentence as a habitual offender was in error because of the prosecution's failure to properly prove the existence of the required prior convictions. We conclude that Vince's conviction ought to be affirmed but that the judgment of sentence must be vacated and this cause remanded for resentencing in accordance with the terms of this opinion.

I.

Facts
¶ 2. A law enforcement officer investigating the suspected theft of a skidder and trailer owned by Harold Puderer was able to locate the missing items hidden in a clearing on wooded property belonging to the appellant, Jerry Vince. The property was removed by Puderer with permission of the investigating officer but without Vince's knowledge. This resulted in Vince reporting the equipment as being stolen from him. In the course of the investigation, Vince claimed to have purchased the equipment from an individual named Mark Miller, who had appeared at his residence unannounced and offered the equipment for sale for $1,000. Vince produced a bill of sale that, on its face, appeared to have been executed by Miller before a notary public in Louisiana. However, at trial, the investigating officer testified that the Louisiana official told him that Vince had appeared alone at his office to obtain the notary's acknowledgment of execution of the document. Law enforcement officers were unable to locate an individual named Mark Miller, and Vince told them that he had never seen the man until he appeared at his door offering to sell the equipment. A witness at trial testified that Vince had discussed the equipment with him and, rather than claiming ownership through purchase, had told him that the equipment was borrowed.
¶ 3. The defense did not call any witnesses.

II.

Admissibility of Prior Conviction
¶ 4. The facts of this case illustrate the confusion that sometimes arises regarding the purposes for which, and the circumstances under which, a defendant's prior convictions may be introduced into evidence for consideration by the jury. At the close of the prosecution's case, the State sought a ruling that evidence of Vince's prior conviction for interstate transportation of a stolen vehicle was admissible. In the context of the prosecution's remarks and the timing of the motion, it is evident that the State sought the *513 court's ruling as a warning shot across the defendant's bow in anticipation that Vince might be considering taking the stand in his own defense. The State's attorney specifically invoked Mississippi Rule of Evidence 609 in seeking a ruling from the court. Rule 609 deals strictly with the use of prior criminal convictions used "[f]or the purpose of attacking the credibility of a witness...." M.R.E. 609(a).
¶ 5. Nevertheless, the State's argument in favor of admissibility centered entirely on the proposition that the prior conviction met one of the stated exceptions to Mississippi Rule of Evidence 404. Rule 404 deals with the entirely different proposition that proof of prior criminal activity, though generally not admissible if offered to persuade the jury that the defendant has a propensity for such behavior, may be admissible in certain specific situations as tending to make the fact of defendant's guilt more likely. M.R.E. 404(b). Though not an exhaustive list, the rule suggests several circumstances where evidence of previous criminal involvement may be admitted as bearing directly on the issue of guilt. The list includes matters such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.E. 404(b).
¶ 6. One of the principal differences between prior conviction evidence admitted under Rule 404(b) and Rule 609 is that evidence of prior criminal activity admitted for one of the purposes allowed under Rule 404(b) is admissible as a part of the prosecution's case in chief without regard to whether the defendant may, or may not, take the stand in his own defense. On the other hand, it is self-evident that, if the defendant elects not to testify, then there is no basis to impeach him as a witness and Rule 609 cannot be the vehicle to get a prior conviction before the jury.
¶ 7. In the case now before us, the prosecuting attorney initially framed his motion as being brought under Rule 609 but the thrust of his argument was that the prior conviction was admissible under Rule 404(b), specifically to negate a claim of accident or mistake. The trial court, in ruling on the admissibility of the prior conviction, also based its ruling on Rule 404(b) considerations and not Rule 609.
¶ 8. Now, on appeal, Vince claims that the court's determination was incorrect under Rule 609 and that the prior conviction was not admissible for purposes of impeachment. He claims that he elected not to testify based on the chilling effect of the court's erroneous ruling and that this had the effect of denying him a fundamentally fair trial. However, as the foregoing discussion has shown, the admissibility of this previous conviction hinged, not on whether Vince elected to testify in his own defense, but on whether the defense presented evidence from any source that tended to advance a claim that his possession of the stolen property was somehow accidental or mistaken on his part. Once such a claim became a legitimate issue in the trial, according to the trial court's ruling, the prior conviction would be admissible.
¶ 9. Certainly, the defendant taking the stand and advancing a version of events that tended to make his possession appear accidental or based on some mistake would be one way to invoke a claim of accident or mistake within the meaning of Rule 404(b), but it is just as certainly not the only way. Facts setting up such a claim could also be provided by defense witnesses other than the defendant. This would lay the predicate for admissibility of the prior conviction under the theory of the court's ruling just as effectively as testimony to that effect from Vince. By the same token, Vince could have testified in his own defense and not said anything that would *514 legitimately raise the issue of accident or mistake and the prior conviction would remain inadmissible under Rule 404(b) because of the absence of a proper predicate, i.e., putting a claim of accident or mistake at issue. In that second scenario, where the defendant testifies, the question of whether the conviction would be admissible purely for impeachment purposes under Rule 609 would have been an entirely different matter.
¶ 10. On the record now before us, the admissibility of the conviction purely for impeachment purposes under Rule 609 has never been properly considered and ruled upon by the trial court. Our duty is to rule on claimed errors committed at the trial level and we normally do not consider matters not first presented to the trial court for a ruling. Crenshaw v. State, 520 So.2d 131, 134-35 (Miss.1988). In the case now before us, the trial court ruled the conviction admissible for Rule 404(b) purposes. Vince contends in this appeal that the conviction was not admissible for impeachment purposes under Rule 609, which, despite some loose language in the record, has not been ruled on by the trial court. Nothing in the issues raised or argued in this appeal significantly challenge the trial court's ruling as to Rule 404(b) admissibility, and, in all events, a ruling based on Rule 404, even if erroneous, does nothing to improperly interfere with a defendant's right to testify in his own defense. The issue is without merit.

III

Ineffective Assistance of Counsel
¶ 11. The investigating officer was permitted to testify without objection that he discussed the circumstances under which the sworn acknowledgment of the bill of sale had been obtained with the Louisiana notary public and that the official had confirmed that Vince alone had appeared and requested the official's certification. Vince now asserts that this evidence was plainly objectionable hearsay and was extremely damaging to the defense. He says that defense counsel's failure to interpose a timely hearsay objection to the damaging testimony is enough to demonstrate that he was denied his constitutionally-guaranteed right to effective assistance of counsel in defending the charges against him.
¶ 12. Claims of ineffective assistance of counsel, in order to prevail, must meet a two-prong test. First, it must be shown that counsel's performance was deficient. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Secondly, it must be shown that, but for counsel's deficient performance, there was a substantial likelihood of a different outcome in the case. Id. We would agree that the statement offered by the investigating officer concerning what he learned in a conversation with the Louisiana notary public was hearsay that, upon a timely objection, ought to have been excluded from the evidence. We also are satisfied that the evidence was damaging to the defense.
¶ 13. However, there was a substantial amount of admissible evidence that tended to cast doubt on the legitimacy of the bill of sale, including the fact that the mysterious seller named in the instrument could not be located and the inherent implausibility of Vince's version of events as related by him to the investigating officer. When combined with the fact that the defense did not offer any evidence tending to establish a legitimate transaction of sale between Vince and this shadowy figure, we conclude that there was a substantial body of evidence from which the jury could reasonably conclude that the bill of sale was not genuine, even without evidence regarding the Louisiana notary public's purported *515 knowledge about the circumstances of its execution. That fact, combined with other evidence in the record tending to establish Vince's guilty knowledge concerning his possession of the equipment, appears to have made the overall evidence of Vince's guilt overwhelming with or without the hearsay statements allegedly made by the Louisiana notary public. In that circumstance, even were we to conclude that defense counsel's failure to interpose a hearsay objection in this one instance, of itself, rose to the level of incompetent performance that would invoke Strickland, we do not conclude that there was a reasonable probability that the exclusion of this evidence would have resulted in an acquittal. For that reason, the claim of ineffective assistance fails to meet the second part of the two-prong test of Strickland and, for that reason, cannot succeed.

IV.

Circumstantial Evidence Instruction
¶ 14. Vince claims that the case against him is based entirely on circumstantial evidence and that the trial court erred in refusing his requested "two interpretation" instruction. Instructions of this nature are required only when all of the evidence tending to establish guilt is circumstantial. Sullivan v. State, 749 So.2d 983, 992 (¶ 20) (Miss.1999). The Mississippi Supreme Court has said, in a drug possession case, that eyewitness evidence placing illicit drugs in the defendant's apartment was direct evidence of constructive possession which negated the requirement of a circumstantial evidence instruction. Keys v. State, 478 So.2d 266, 268 (Miss.1985). In the case before us, there was eyewitness testimony that Vince was in actual possession of the stolen equipment. Possession, as in Keys, is one of the essential elements of the crime, the only remaining question in Vince's case being his understanding of the nature of his possession. The State was, beyond question, unable to present any direct evidence that Vince knew that the equipment had been stolen; however, there was testimony that Vince had told conflicting stories regarding how he came into possession of the property and had offered what the jury could reasonably have concluded was a forged bill of sale as proof of ownership. That was, in our view, sufficient to support the jury's determination that Vince knew or reasonably should have known that the equipment was stolen. The Mississippi Supreme Court observed in Keys that "[p]roof of felonious intent will always be by circumstantial evidence except where the accused has confessed." Id. However, intent or guilty knowledge is only one element of the crime. We conclude that the direct evidence of possession was enough, under established case law, to remove the necessity for a circumstantial evidence instruction or the related "two interpretation" instruction.

V.

Proof of Prior Convictions for Enhanced Punishment
¶ 15. The trial court permitted an amendment to the indictment to assert that Vince was a habitual criminal subject to enhanced punishment under the provisions of Section 99-19-81 of the Mississippi Code. There is no written motion in the record requesting such an amendment though there are statements in the record by the prosecuting attorney that "the State has put him [Vince] on notice that it intends on proceeding as an habitual...." None of the dialogue on the record regarding the State's intentions sets out with any clarity the relevant facts necessary to identify the prior convictions relied upon by the prosecution until after the sentencing hearing had begun.
*516 ¶ 16. The order allowing the amendment, quoted in its entirety, states as follows:
This cause having come to be heard on motion of the State of Mississippi to amend the above referenced indictment to reflect the habitual status of the defendant pursuant to Mississippi Code Section 99-19-81 and the court having heard the evidence finds the motion well taken as the defendant was convicted of two prior felonies. Therefore, it is
Ordered that the above referenced indictment is amended to reflect the habitual status of the defendant pursuant to M.C.A. Section 99-19-81, as amended, the court having heard the evidence finds the motion well taken as the defendant was convicted of two prior felonies.
¶ 17. While Vince's complaint raised in his brief deals with the sufficiency of the evidence presented to establish his two prior convictions, we are constrained to note as plain error the evident deficiency in the form of the amended indictment insofar as it purported to charge Vince as a habitual offender. Uniform Circuit and County Court Rule 11.03 requires that, in cases such as this:
[t]he indictment must include both the principal charge and a charge of previous convictions. The indictment must allege with particularity the nature or description of the offense constituting the previous convictions, the state or federal jurisdiction of any previous conviction, and the date of judgment.
URCCC 11.03.1.
¶ 18. In Ard v. State, the Mississippi Supreme Court considered an indictment that purported to charge the defendant as a habitual offender. Ard v. State, 403 So.2d 875, 876 (Miss.1981). Apparently, the necessary information as to one indictment was included in the amendment; however, the court found the indictment to be defective on its face in its attempt to charge the necessary second prior conviction. As to that conviction, the indictment read: "[A]nd the said Billy Ard was convicted in the State of Mississippi, of another felony, same being Cause No. 218." Id. The court said that "[i]t is readily seen that the indictment does not meet the requirements of the statute ..." and, thus, rendered invalid any attempt to sentence Ard as a habitual offender. Id.
¶ 19. In Lay v. State, the supreme court dealt with an indictment that purported to charge a single prior drug-related conviction to enhance the degree of punishment in a heroin sale case. Lay v. State, 310 So.2d 908, 909 (Miss.1975). As to the prior conviction, the indictment charged as follows:
[that John Lay, Jr.] did willfully, knowingly, unlawfully and feloniously sell, barter and transfer a controlled substance without authority of law, to-wit: Heroin, and that said John Lay, Jr. has previously been convicted in New Orleans, Louisiana on May 20, 1969 and July 15, 1969 for violation of the Uniform Controlled Substance Act of 1972, as amended....
Id. The court found this language fatally defective as not supplying the necessary "particularity" to properly charge prior convictions. Id. at 910. Equally as important to the case now before us, the supreme court specifically held that "[t]hese defects in the indictment were not waived even though Lay failed to demur to the indictment before trial." Id.
¶ 20. Because the defect in the indictment in this case was so fundamental and because of the importance to the criminal process of a properly drawn indictment that fully acquaints the defendant with the nature of the accusations brought against him, we note the matter as plain error and *517 conclude that it requires us to reverse Vince's sentence insofar as he was sentenced as a habitual offender. See Usry v. State, 378 So.2d 635, 639 (Miss.1979) (discussion).
¶ 21. We cannot leave this aspect of the case, however, without further observing the long-standing admonition of the supreme court warning against the "tendency to routinely allow the state to produce some documentation of prior offenses and for the trial court to perfunctorily find the defendant an habitual offender...." Seely v. State, 451 So.2d 213, 215 (Miss.1984). Rather than approving such an off-hand treatment of the issue, the supreme court said:
We wish to leave no doubt that the requirement of a bifurcated trial means a full two-phase trial prior to any finding that a defendant is an habitual offender and subject to enhanced punishment. Further, a complete record of the second part of the trial must be made.
Id. In the case now before us, the entire extent of the proof as to Vince's prior convictions consisted of the following statement by the prosecuting attorney:
Your Honor, prior to sentencing, Your Honor, the State of Mississippi has filed a motion to amend the indictment reflecting the habitual status of Mr. Jerry Vince.
In support of that motion we tender to the Court the NCIC report, demonstrating several prior convictions. But for the purpose of this motion, I will highlight 1976, Mr. Vince was sentenced to Angola Penitentiary in the State of Louisiana, for a term of eighteen months; and in 1990, he was sentenced in the Federal District Court of Cincinnati, Ohio, for the charge of Interstate Transportation of a Stolen Motor Vehicle, and was sentenced to twenty-seven months. For the purpose of this motion, Your Honor, we tender this.
¶ 22. Without reaching the unresolved issue of whether an unauthenticated computer printout purporting to be an NCIC compilation of a defendant's criminal history is sufficient evidence to establish prior convictions beyond a reasonable doubt, we observe that, in this case, the report is not a part of the record. The NCIC printout does not appear as one of the exhibits, nor is it listed as an exhibit in the official transcript prepared by the court reporter. The State has the burden of proof as to all the essential elements of the crime. Washington v. State, 645 So.2d 915, 918 (Miss.1994). Even without consideration of the defects on the face of the indictment, we are forced to conclude that the State failed as a matter of law to carry its burden of proof to show Vince's requisite prior convictions beyond a reasonable doubt. Thus, we conclude this to be a second and equally compelling reason to vacate Vince's sentence insofar as it purported to sentence him as a habitual offender under Section 99-19-81 of the Mississippi Code.
¶ 23. We note that during the course of the sentencing hearing the prosecuting attorney offered the observation that the State relied on the NCIC printout "pursuant to [Ficklin] v. State, a 2000 Court of Appeals case, stating that computer printouts of the NCIC report were admissible and legally sufficient to amend the indictment."
¶ 24. This statement is incorrect. This Court's decision in Ficklin v. State, 758 So.2d 457 (Miss.Ct.App.2000) did not involve the question of the admissibility or the evidentiary worth of raw NCIC printouts. Rather, that case dealt with computer-generated records of the Mississippi Department of Corrections regarding Ficklin's prior history of incarceration in *518 this State, which records were found to be exceptions to the hearsay exclusionary rule as being data compilations of records maintained in the ordinary course of a public agency's business. Ficklin, 758 So.2d at 462. The records were further found to be self-authenticating because they were certified in writing as being correct under the signature of the custodian of those records. Id. These records are markedly different from NCIC records, which purport to be a compilation of information gathered from various jurisdictions throughout the country, the accuracy of which cannot necessarily be certified by the NCIC compiler. By way of example, though the NCIC custodian may properly certify that the NCIC report is an accurate transcription of criminal records supplied by the State of Idaho, that custodian is not in a position to assess the accuracy of the underlying information provided by the records custodian. See Harveston v. State, 798 So.2d 638, 640-41 (¶¶ 5-11) (Miss.Ct.App.2000).
¶ 25. Because we have already decided that the enhanced punishment meted out to Vince on this record cannot be upheld, we find no purpose in delving further into the issue of the utility of NCIC records as evidence. Rather, we end this portion of the opinion by offering this simple admonition from the Mississippi Supreme Court in McIlwain v. State:
We have regularly upheld sentences under the habitual criminal statutes where the proof of prior convictions was made by certified copies of the judgments of conviction. This accords with the basic principle that the best evidence of a conviction is the judgment of conviction.

McIlwain v. State, 700 So.2d 586, 589 (¶ 13) (Miss.1997) (emphasis supplied) (citations omitted). A prosecuting attorney, intent on proving prior convictions, would do well to heed this simple and straightforward advice from the Mississippi Supreme Court rather than needlessly testing the limits of the rules of evidence by attempting to make do with increasingly remote and less reliable methods of proof.
¶ 26. Our decision to reverse and render on the propriety of sentencing Vince as a habitual offender renders moot another aspect of Vince's claim that he received ineffective assistance of counsel. Vince argued in his brief that his attorney's failure to oppose the introduction of the NCIC report on hearsay grounds rendered counsel's performance ineffective when measured against the level of competency guaranteed him by the Sixth Amendment. Having decided the question of sentencing as a habitual offender in Vince's favor on other grounds, we need not consider that claim on the merits.

VI.

Weight and Sufficiency of the Evidence
¶ 27. Vince argues that the evidence was insufficient as a matter of law to support a guilty verdict. Alternatively, he urges that the verdict was against the weight of the evidence, entitling him to a new trial. His argument is based on what he perceives to be the unsatisfactory nature of the State's proof of guilty knowledge on his part. In claims of this nature, this Court must review all of the evidence and view it in the light most favorable to upholding the verdict. McFee v. State, 511 So.2d 130, 133 (Miss.1987). We are further required to conclude that the jury drew all reasonable inferences from the evidence in a manner consistent with a finding of guilt. Id.
¶ 28. We have, in another part of this opinion discussing the necessity for a circumstantial evidence instruction, dealt with the evidence that we found was sufficient to support an inference of guilty *519 knowledge on Vince's part. The conclusion we reached on that issue answers equally as well on this question and demonstrates the lack of merit in Vince's claim that the evidence was insufficient to convict.
¶ 29. As to the claim that the verdict was against the weight of the evidence, we observe that the defense presented no evidence to counterbalance the State's proof that we have found sufficient to support a reasonable inference of guilty knowledge on Vince's part. A new trial may be ordered on this ground only to avoid a substantial miscarriage of justice. Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). There was ample evidence that, if found credible by the jury, would establish Vince's guilt and there was essentially no affirmative evidence tending to show that his possession of the equipment was derived and maintained innocently. The jury determines what weight and worth to give to the evidence. Meshell v. State, 506 So.2d 989, 991 (Miss.1987). By its verdict, it plainly indicated that it found the State's proof trustworthy and we can discover no basis to conclude that the jurors somehow deviated from their duty in so finding. Vince has failed to demonstrate that he is entitled to a new trial in order to avoid a manifest injustice.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF WALTHALL COUNTY OF CONVICTION OF RECEIVING STOLEN PROPERTY IS AFFIRMED. THE JUDGMENT CONCLUDING THAT THE DEFENDANT IS SUBJECT TO ENHANCED PUNISHMENT UNDER SECTION 99-19-81 OF THE MISSISSIPPI CODE AS A HABITUAL OFFENDER IS REVERSED AND RENDERED AND THIS CAUSE IS REMANDED FOR THE SOLE PURPOSE OF RESENTENCING THE APPELLANT. COSTS OF THIS APPEAL ARE ASSESSED TO WALTHALL COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.